UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| STACY C. STRIBLIN, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 2:13-CV-22 PS |
| SHERIFF JOHN BUNCICH, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Stacy C. Striblin, a *pro se* prisoner, claims that Sheriff John Buncich housed him under substandard conditions at the Lake County Jail, which caused him to contract MRSA[1] and that Valerie Kalamaras, Nurse Practitioner Choi Eunjin and Dr. Jose M. Agusti were deliberately indifferent in providing him medical care for that condition. (DE 11.) The defendants seek summary judgment (DE 69, 74.) While the motions for summary judgment were pending, Striblin filed a motion to compel, seeking to compel the defendants to provide further responses to a number of interrogatories that he served on them.(DE 56, 57.)

**I. Motion to Compel**

While Striblin does not detail his objections, he asserts that the defendants have not properly answered interrogatories 4, 5, 6, 8, 9, 13 and 20. (See DE 81 at 12, 13.) Upon review, even if the disputed discovery was answered to Striblin's satisfaction, Striblin has not persuaded me that those answers would change the outcome of granting the

---

[1] The infectious disease methicillin-resistant Staphylococcus aureus. (DE 71 at 2.)

motions for summary judgment. Indeed, the requested answers would not establish any personal liability on behalf of Sheriff Buncich nor would they demonstrate that the medical defendants engaged in deliberate indifference while treating Striblin's MRSA. Nevertheless, in an abundance of caution, I'll consider the appropriateness of each answer in turn.

In Interrogatory no. 4, Striblin asked:

> State the duties of Valerie Kalamaras, Medical Director of Lake County Jail. If those duties are set forth in any job description or other document, produce the document(s), including:
> a) Requirements, and eligibility to hold such an title, and/or job position;
> b) Documents, and certification showing proof of qualification to hold such an title and/or job position; and
> c) Date and place certificate(s) were received and/or achieved.

Sheriff John Buncich responded: "Upon information and belie[f] Defendant Kalamaras has never been the medical director at the Lake County Jail. Additionally, Defendant Kalamaras does not currently work at the Lake County Jail." (DE 65 at 3.) The medical defendants responded: "Defendant Kalamaras is not now and has never been the Medical Director at the Lake County Jail." (DE 98-1 at 3) Upon review, I find Defendants' responses proper. This interrogatory essentially seeks information about Ms. Kalamaras and her duties as the medical director position at the Lake County Jail. The problem is she isn't the medical director, so no further response to this interrogatory will be ordered.

In Interrogatory no. 5, Striblin asked:

2

> State the duties of Defendant, Eunjin Choi, Doctor and/or Jail physician at the Lake County Jail insofar as they pertain to providing medical care to prisoners. If those duties are set forth in any job description or other document, produce the document(s), including:
> a) Requirements, and eligibility to hold such an title, and/or job position;
> b) Documents, and certification showing proof of qualification to hold such an title and/or job position;
> c) License and registration showing proof of qualification to perform any form, and/or type of surgery; and
> d) Date and place certificate(s) were received and/or achieved.

Sheriff John Buncich responded: "Upon information and belief Eunjin Choi has never served as Medical Director or Jail Physician at the Lake County Jail. Additionally, Defendant Choi does not currently work at the Lake County Jail." (DE 65 at 3.) The medical defendants responded likewise: "Defendant Choi is not now and has never been a doctor or a physician at the Lake County Jail." (DE 98-1 at 3.) The Defendants' responses were proper here, too. This interrogatory essentially seeks information about Eunjin Choi in her position as a doctor at the Lake County Jail. But since Choi is a nurse practitioner, not a jail physician, the defendants responses to the interrogatory were accurate and complete. While I concede that this is a somewhat technical reading of the interrogatory, the burden is on the person seeking the answers to be precise in how they ask the questions. So no further response to this interrogatory will be ordered.

In Interrogatory no. 6, Striblin asked:

> State the duties of Defendant, Jose Agusti, Doctor and/or Jail physician at the Lake County Jail insofar as they pertain to providing medical care to prisoners. If those duties are set forth in any job description or other document, produce the document(s), including:

3

> a) Requirements, and eligibility to hold such an title, and/or job position;
> b) Documents, and certification showing proof of qualification to hold such an title and/or job position;
> c) License and registration showing proof of qualification to perform any form, and/or type of surgery; and
> d) Date and place certificate(s) were received and/or achieved.

Sheriff John Buncich responded: "N/A Jose Agusti does not currently work at the Lake County Jail." (DE 65 at 4.) The medical defendants objected and, without waiving their objection, responded: "defendant Agusti states that he is not now and has never been employed with the Lake County Jail. He provided medical care to inmates at the jail as an employee of Correctional Health of Indiana, Inc., and is duly-qualified to do so by virtue of his medical education and licensure as a physician by the State of Indiana. Dr. Agusti received his medical degree from Cayetano Heredia University in Lima, Peru, in 1994; completed a residency in internal medicine at Advocate Illinois Masonic Medical Center in 2000; and is board certified in internal medicine." (DE 98-1 at 4.) Upon review, I find Defendants' responses proper here, and no further response will be ordered.

In Interrogatory no. 8 directed at Sheriff Buncich, Plaintiff asked:

> State the name's, title's, and duties of all staff member's, and/or officer's at the Lake County Jail, who have responsibility for maintaining sanitation, and maintenance through the Lake County Jail, including:
> a) Full name;
> b) Present address; and
> c) Telephone number with area code.

Sheriff John Buncich answered: "OBJECTION. Interrogatory 8 is vague and overly broad as no time period has been specified." (DE 65 at 4.) I agree that this request is far too vague and over broad, as it is not limited in time or scope. This could arguably include nearly every Lake County Jail employee from the time the jail opened through the time the interrogatories were served. In addition, the interrogatory encompasses highly personal and irrelevant information such as the employees' home address and phone number. For those reasons, I decline to order any further response to this request.

Finally, Striblin complains that he did not receive the documents requested in Interrogatory nos. 9, 13 and 20. (DE 81 at 13.) As Sheriff Buncich correctly explained to Striblin in October 2014, requests for documents are not the purpose of interrogatories and, as such, there is no further answer required. (DE 65 at 5.) Nevertheless, Sheriff Buncich also objected to the production of the requested documents. I have reviewed Sheriff Buncich's objections to Interrogatory Nos. 9, 13 and 20 and find them to be appropriate. Not only are Striblin's requests overly broad but they are unduly burdensome, as the requests are not limited in time or scope. Moreover, they also request personal information regarding individuals who are not parties to this case.

Striblin's motion also sought to compel the medical defendants' responses to his written discovery. However, as the medical defendants have since provided those responses, (DE 98-1, 98-2, 98-3), this aspect of the motion to compel is moot. Nevertheless, Striblin seeks unspecified sanctions under Rule 37 of the Federal Rules of

5

Civil Procedure due to the medical defendants' delay in responding to his discovery requests. (DE 111, 113.) But, as the medical defendants have convinced me that their late discovery responses were the result of excusable neglect, (see DE 98), I will decline to impose any sanctions. *See Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295 (7th Cir. 1993) (recognizing a district court's broad discretion when deciding if sanctions for discovery violations should be imposed). Notably, the medical defendants have not displayed any frequent disregard of discovery rules, court deadlines or schedules throughout this case. Their delay here was a one-time occurrence, resulting from a combination of changing attorneys and problems getting the discovery responses reviewed, signed and returned.

## II. Motions for Summary Judgment

### Factual Background

Between 1991 and 2011, Striblin had been incarcerated at various jails, including the Cook County Jail, on more than ten occasions. (DE 52 at 4-10.) On June 10, 2011, Striblin was arrested and booked into the Lake County Jail for the first time. (DE 91 at 20; DE 52 at 4-10; DE 66-30 at 75.) During the booking process, Striblin was placed in a holding cell area with approximately thirty-six (36) other inmates who were also waiting to be processed. (DE 91 at 23.) He was issued a blanket, but slept on the concrete floor. (*Id.* at 24.)

Two days later, on June 13, 2011, Striblin underwent a routine medical screening, which included being asked whether he had recently seen a doctor. (DE 66-30.) The

records from that screening reveal Striblin indicated he had recently been seen by a doctor who lanced a boil under his arm. (DE 66-30, at 75, no. 5.) Dr. William Forgey, Medical Director at the Lake County Jail, believes this medical record is consistent with a skin lesion secondary to infection with Methicillin-resistant Staphylococcus aureus ("MRSA"). (DE 71 at ¶ 10.) However, Striblin claims the defendants fabricated his answer in that medical record. (DE 91 at 21.) Striblin asserts he answered that question, "no," and maintains that he never had any outbreaks of skin lesions prior to his arrival at the Lake County Jail. (DE 91 at 10, 21.) Because I must draw all reasonable inferences in favor of Striblin, the non-moving party, I will not consider this disputed evidence.

Striblin believes he contracted MRSA during the days he spent sleeping on the floor while being processed from June 10, 2011, to June 14, 2013. (*Id*. at 24.) On June 14, 2011, Striblin was moved from the booking area to general population. (*Id*. at 23.) Striblin was released from custody on August 30, 2011. (DE 91-1 at 106.) On September 7, 2011, Striblin was arrested in Illinois and spent one week in the Cook County Jail. (*Id*. at 25.)

On November 16, 2011, he was arrested in East Chicago, Indiana, and soon thereafter was again booked into the Lake County Jail. (*Id*. at 26.) During the booking process, he underwent another routine medical screening, which included being asked about his health and current medical condition. (*Id*. at 27; DE 91-1 at 98, 99, 100, 101, 102, 103.) The only medical condition noted was a broken left thumb. (*Id*.) Because Striblin had a cast on his left hand, he was not allowed in general population. (DE 91 at

28.) Instead, he was placed in one of the medical housing units on the fourth floor. (*Id*.) Striblin believes his cell mate "may of had an infection or a[] contagious disease such as 'MRSA.'" (*Id*. at 29.) In addition, Striblin asserts the living conditions were unhealthy as they consisted of torn mattresses, showers that are sometimes flooded with raw sewage, and stains, mold and mildew on the walls. (DE 91 at 30.)

On November 28, 2011, Striblin complained of an infection and was moved back into a one man cell in the medical housing unit. (*Id*. at 37; DE 91-1 at 84.) He was also prescribed the antibiotic Bactrim. (*Id*.) On November 29, 2011, Striblin was seen by Doctor Agusti and Nurse Practitioner EunJin Choi. (*Id*.; DE 91-1 at 80.) There was no drainage present, but Striblin was prescribed the antibiotic Bactrim. (DE 91-1 at 80.) On December 5, 2012, the swelling on his left cheek had decreased; it was never drained. (DE 91-1 at 71.) Director of Nursing, Valerie Kalamaros, inspected Striblin's infection, moved him to an isolated cell and prescribed him with an antibiotic. (*Id*. at 33, 35.) On January 13, 2012, Striblin was released from the Lake County Jail. (*Id*. at 38.)

On January 31, 2012, Striblin was again admitted to the Lake County Jail as a pre-trial detainee. ( DE 77-1, 77-2, 77-3; DE 71 at ¶ 5.) At intake, Striblin had a laceration on his chin and a boil on his abdomen. (DE 66-28 at 17, 23, 37-30.) He was medically assessed by a nurse practitioner on February 3, 2012, at the direction of Dr. Forgey. (DE 66-25 at 45, DE 66-28 at 17, 23, 27-30.) A specimen taken from the abscess for culturing subsequently grew MRSA. (DE 71 at ¶ 5; DE 66-25 at 45.) This was the first time Striblin was diagnosed with a MRSA infection. (*Id*.) The abscess was treated with the

antibiotic Bactrim. (*Id*.) Striblin believes this procedure of draining his boil was "bogus." (DE 91 at 40.)

While an inmate at the jail, Striblin had periodic outbreaks of skin infections secondary to his infection with MRSA. (*Id*.) Each of these outbreaks were either treated by antibiotics, surgically drained, or both. (*Id*. at 41, 44; DE 91-2 at 1260-1273.) Dr. William Forgey, the medical director at the Lake County Jail, concluded that the treatment of Striblin's periodic skin infections secondary to MRSA by antibiotics and/or surgical drainage was medically reasonable and appropriate under the circumstances, such treatment is the preferred method of treatment for such lesions, and that manner of treatment complied with the medical standard of care. (*Id*. at 6.)

Dr. Forgey also commented that MRSA is not an uncommon pathogen in the correctional setting. (*Id*. at 8.) However, it generally does not live on high-touch surfaces for more than ninety (90) days and is easily killed by anti-bacterial cleansers and disinfectants. (*Id*.) During Striblin's periods of incarceration, the jail had a cleaning program designed to prevent the spread of infections pathogens, such as MRSA, within the inmate population. (*Id*.; DE 77-7 at ¶ 10.) The jail's cleaning program included: "daily cleanings of all jail sections by broom sweeping and wet mopping using detergent and a disinfectant called pH7Q Ultra, which is effective against MRSA; weekly cleanings of regular shower rooms and toilets by wet mopping with brushes and scrub pads using detergent and pH7Q disinfectant; twice weekly cleanings of the booking intake area and fourth floor shower rooms by broom sweepings, wet mopping

9

and a foam gun using detergent and the pH7Q disinfectant; and deep cleaning of all jails sections on an as-needed basis using detergent and the pH7Q disinfectant." (*Id.*) Specific sections requiring more frequent disinfection under recognized infectious disease standards were disinfected with pH7Q under Dr. Forgey's direction. (*Id.*) There is no medically-proven way to eliminate all risk of infection from pathogens like MRSA in any correctional setting. (*Id.*)

Despite this policy, Striblin asserts that cleaning supplies were handed out to the jail housing units only once per week. (DE 91 at 13.) The cleaning supplies handed out included two buckets of "watered down cleaning solution, and chemicals," a worn out scrub brush for the shower and three scrub pads. (*Id.*) While he was incarcerated, Striblin never saw a foam gun or pH7Q used to clean the jail booking intake area or the fourth floor shower rooms. (*Id.* at 14.)

As the medical director of the jail, Dr. Forgey regularly monitored patterns of infection within the inmate population. (*Id.* at 9.) There were no inmates with MRSA that were housed in a cell subsequently occupied by Striblin within 90 days leading up to any of his skin outbreaks. (*Id.*) Dr. Forgey's medical opinion and conclusion[2] is that there is nothing about the MRSA infection pattern at the jail in 2011-2013 generally

---

[2] Striblin takes issue with Dr. Forgey's affidavit because Dr. Forgey became employed at the Lake County Jail in 2012, after some of the events transpired in this case. Striblin's complaints are for naught. Dr. Forgey's statements were the result of reviewing medical records in conjunction with his knowledge as a physician. Medical professionals often reach opinions by reviewing relevant medical records. *See e.g. Davis v. Unum Life Ins. Co. Of Am.*, 444 F.3d 569, 577 (7th Cir. 2006) (noting that it is "commonplace practice" for doctors to arrive a professional opinions after reviewing medical files. "In such file reviews, doctors are fully able to evaluate medical information, balance objective data . . . and render an expert opinion without direct consultation.").

which suggests to a reasonable degree of medical probability that Striblin first acquired MRSA at the jail. (*Id*.) Additionally, Dr. Forgey found "that Mr. Striblin's periodic outbreaks of skin lesions and abscesses secondary to MRSA have been treated in a medically reasonable and appropriate manner and are not due to any inadequate medical care or sanitation precautions while he was an inmate at the jail." (*Id*. at 11.)

Striblin states that he wrote letters to Sheriff Buncich[3] about the conditions at the Lake County Jail, but nothing was done. (DE 91 at 2.)

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate, however, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and

---

[3]There are approximately 700 to 1,000 inmates at the Lake County Jail at any given time. (DE 77-7 at ¶ 4.) Because of this large population, Sheriff Buncich is unable to personally communicate with all - or even most - of the inmates. (*Id*. at ¶ 5.) Sheriff Buncich asserts that he never communicated with Striblin or received any written correspondence from Striblin. (*Id*. at ¶ 6, 7, 8.) In fact, Sheriff Buncich claims he was unaware that Striblin was even housed at the jail until he was served with a copy of the complaint in this case. (*Id*. at ¶ 9.) However, because I must draw all reasonable inferences in favor of Striblin, the non-moving party, I will not consider this disputed evidence.

11

draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is warranted. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

A. **Eighth Amendment Conditions of Confinement Claim**

Striblin's first claim is that he was housed under substandard conditions that resulted in him contracting MRSA. In evaluating a conditions of confinement claim, I am to conduct both an objective and a subjective inquiry.[4] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment, which extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). To successfully establish a constitutional violation for the conditions of confinement, a plaintiff must demonstrate that the conditions of confinement amounted to a punishment. *Tesch v. County of Green Lake*, 157

---

[4] The record shows Striblin was a pretrial detainee for some of his time at the Lake County Jail, during which time the Fourteenth Amendment applied to his conditions of confinement claim; once he was convicted the Eighth Amendment applied. *Lewis v. Downey*, 581 F.3d 467, 473-74 (7th Cir. 2009). The governing standards are functionally equivalent, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id.* at 475.

12

F.3d 465, 473 (7th Cir. 1998). There is both a subjective and objective component to the inquiry. "Conditions of confinement will be considered punishment when the conditions inflicted on a plaintiff are objectively severe and imposed with the intent to punish or deliberate indifference to the prisoner's discomfort." *Walton v. Cook County Municipality*, No. 12 C 5905, 2014 WL 917012 at 6 (March 7, 2014 N.D. Ill.) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991); *Tesch*, 157 F.3d at 472-73. To show deliberate indifference, Striblin must show that Sheriff Buncich was aware of a substantial risk of injury to Striblin, but failed to take appropriate steps to protect him from a known danger. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

   1.   **Are the Conditions at the Lake County Jail Objectively Severe?**

Striblin claims "the Jail holding cells, and sleeping areas were unsanitized, nasty and filthy, because detainees were not given proper cleaning supplies by the guards." (DE 90 at 2.) According to the record before me, however, Striblin cannot establish that the conditions at the Lake County Jail were objectively severe or posed a serious risk of substantial harm. Although Striblin would have liked the jail to have been cleaned more often, the record shows that the jail had a cleaning policy and the showers and other common areas of the jail were cleaned, at least on a weekly basis. (DE 91 at 13; DE 71 at ¶ 8.) The mere presence of some dirt, mold, or mildew at the jail does not establish the type of severe deprivation needed to establish a constitutional violation. *See Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) ("[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [cruel and

13

unusual punishment]."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (prison's practice of allowing standing water to accumulate in the shower, which inmate feared could cause spread of communicable diseases, did not constitute the denial of minimal civilized measure of life's necessities); *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) (inmate's exposure to moderate levels of environmental contaminants did not violate the Eighth Amendment, because such exposure "is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual").

Striblin also complains that the Lake County Jail did not allow him to shower after the booking process. (DE 90 at 8.) He alleges this is constitutionally inadequate and deprived him of basic human rights. This argument is without merit. The booking process lasted only four days and the Seventh Circuit has long held that limiting inmates to weekly showers does not violate the Eighth Amendment. *Henderson v. Lane*, 979 F.2d 466, 468-69 (7th Cir. 1992). Simply put, there is nothing in the record that would allow a jury to conclude that the conditions at Lake County Jail were cruel and unusual or amounted to a punishment.

From Striblin's submissions, it is clear that he believes he contracted MRSA at the Lake County Jail and, therefore, the conditions at the Jail must be deemed unconstitutional. But that is not the case. As Dr. Forgey explained, MRSA is not an uncommon pathogen in the correctional setting. (DE 71 at ¶ 8.) Thus, the mere fact that an inmate contracted MRSA from a jail does not by itself prove that the conditions of confinement are constitutionally inadequate. *See Shepherd v. Dallas County*, 591 F.3d 445,

454 (5th Cir. 2009)("[I]solated examples of illness . . . standing alone, cannot prove that the conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infection, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subjected to outbreaks . . . . Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs"). Surely, if there was some sort of wide spread MRSA outbreak, there might be a disputed fact as to whether the conditions at the Lake County Jail were cruel and unusual. See e.g., *Duvall v. Dallas County, Texas*, 631 F.3d 203, 208 (5th Cir. 2011) (finding evidence sufficient to establish conditions were cruel and unusual where there "had been serious outbreaks of MRSA in the Jail for at least three years before [the plaintiff's] arrival."). But that is not the case here.[5]

### 2. Deliberate Indifference to Striblin's health – the Subjective Component.

There is also no evidence before me that would establish Sheriff Buncich was deliberately indifferent to Striblin's health. To be deliberate indifferent, "the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *see also Reed v. McBride*, 178

---

[5] Striblin submitted the affidavit of Nicholas Vargas, who claimed to have contracted MRSA at the Lake County Jail sometime in late 2012 or 2013. (DE 91-8.) In addition, Vargas stated that he witnessed numerous inmates who contracted MRSA at the Lake County Jail between June 2012 and February 2013 and also between October 2014 and March 2014. However, aside from the other problems with this affidavit, the events mentioned in the affidavit occurred after the incidents at issue in the complaint. Thus, the affidavit is of little consequence here.

15

F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference").

Striblin claims Sheriff Buncich was deliberately indifferent because the jail was not cleaned pursuant to the jail policies. However, the mere fact that the policies were not followed does not demonstrate deliberate indifference. *See Estate of Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir. 1994) (violation of jail regulation could support a negligence claim, but not a claim of indifference under section 1983 where defendant had no knowledge that violation of policy would result in strong likelihood of violence to inmate); *see also State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983) ("Even if the defendants disregarded one or more of their established procedures . . . [their actions] do not constitute deliberate disregard for the possibility that [an inmate] would take his own life" where defendants lacked actual knowledge). Instead, Sheriff Buncich must have known that failure to follow jail cleaning policies would have placed Striblin at serious risk of being harmed. *Board*, 394 F.3d at 478. There is no evidence in the record that Sheriff Buncich knew or should have known the plaintiff was at serious risk of being harmed by MRSA or any other infectious disease due to the conditions at the Lake County Jail.

Even though Striblin complained to Sheriff Buncich about the cleanliness of the Lake County Jail, the record is devoid of any evidence that Sheriff Buncich was aware Striblin was at serious risk of contracting any sort of illness or infection. Indeed, there is no evidence of any serious outbreaks of MRSA at the jail prior to Striblin's arrival or at

16

the time Striblin claims to have contracted MRSA. Moreover, the record reveals that Striblin did not occupy any cell that was previously occupied by an inmates with MRSA within 90 days leading up to any of his skin outbreaks. As a result, there was nothing to put Sheriff Buncich on notice that there was a serious health risk to Striblin, or any other inmate, contracting MRSA at the Lake County Jail. *Butera*, 285 F.3d at 605 (to establish deliberate indifference, a plaintiff must show that the defendants were aware of a substantial risk of injury to the plaintiff, but failed to take appropriate steps to protect him from a known danger). Consequently, there can be no deliberate indifference to his health and safety.

### 3. Striblin Has Not Established He Contracted MRSA at the Jail.

Finally, even if Striblin would have shown that the conditions of confinement were constitutionally deficient and that Sheriff Buncich was deliberately indifferent, he would still have to show that he contracted MRSA at the Lake County Jail in order to recover. *Doe v. Welborn*, 110 F.3d 520, 523-24 (7th Cir. 1997) (noting that a plaintiff must show "proof of actual injury" to recover). This he cannot do.

While Striblin speculates that conditions at the Lake County Jail caused him to contract MRSA, it is clear that Striblin himself is unaware of when or how he contracted MRSA. At one point, he asserts that he contracted MRSA when he was booked into the Lake County Jail in June of 2011. (DE 91 at 24.) He then later states that he may have contracted MRSA from one of his cell mates in November 2011. (DE 91 at 29.) The record is devoid of any evidence to support either of these speculations. In fact, Striblin

was not diagnosed with MRSA until he arrived at the Lake County Jail in February 2012. Striblin's speculation that he contracted MRSA at the Lake County Jail sometime in 2011 is insufficient to defeat summary judgment. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Although Striblin can testify about his present health condition and when his signs of MRSA first occurred, Striblin's observations cannot establish that the jail conditions caused him to contract MRSA. *United States v. Cravens*, 275 F.3d 637, 640 (7th Cir. 2001) ("Although a lay person may readily observe a [health] problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision."); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish that plaintiff's claim that secondhand smoke caused his symptoms). Notably, Striblin was in and out of jail in 2011 and 2012. He could have contracted MRSA almost anywhere. The only medical evidence in the record is Dr. Forgey's opinion that "there is no reason to reach any such clinical conclusion [that Striblin acquired MRSA due to conditions of the Lake County jail while incarcerated.]" (DE 71 at ¶ 8.) Accordingly, Striblin's claim that he contracted MRSA at the Lake County Jail fails, as no reasonable factfinder could determine the specific source of his infection. For this reason as well, summary judgment for Sheriff Buncich is warranted on this claim.

**B.     Striblin's Claim Regarding his Medical Care**

Striblin's remaining claim is that the three medical defendants - Valerie Kalamaros, N.P. Choi Eunjin and Dr. Jose M. Agusti - failed to properly treat his MRSA, alleging they engaged in "bogus" surgeries and used generic medications. Inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

There is no evidence that any of the defendants acted with deliberate indifference to Striblin's MRSA. To the contrary, the medical records establish that Striblin was often receiving prompt medical attention for his MRSA. Striblin's assertion that the surgical incisions to drain his infections were "bogus" and that he was treated with ineffective "generic" antibiotics have no support in the record. While he was unsatisfied with the surgical drainage and antibiotic therapy, the undisputed evidences

19

shows this treatment complied with the medical standard of care. (DE 71 at ¶ 6.) Furthermore, "generic antibiotics are generally regarded as no less effective than brand name antibiotics, and they are widely used in the medical community to treat bacterial infections including MRSA, even in the hospital setting." (Id. at ¶ 7.) Because it is undisputed that the surgical drainage and the use of generic antibiotics are within the accepted medical standards, the three medical defendants are entitled to summary judgment.

## Conclusion

For these reasons, the court:

(1) **GRANTS** the Defendants' motions for summary judgment (DE 69, 74);

(2) **DENIES** Striblin's motion to compel (DE 80);

(3) **DENIES** Striblin's motions for sanctions (DE 111, 113); and

(4) **DIRECTS** the clerk to enter judgment in favor of the defendants..

**SO ORDERED**.

ENTERED: August 7, 2015.

s/ Philip P. Simon  
Philip P. Simon, Chief Judge  
United States District Court
